UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN WOLF KOSTICK,

           Plaintiff,

-v-

KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

CIVIL ACTION NO.: 21 Civ. 7107 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.    INTRODUCTION

Plaintiff John Wolf Kostick ("Mr. Kostick") commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g). (ECF No. 1 ¶ 1). Mr. Kostick seeks review of the denial by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA") of his application for Disability Insurance Benefits ("DIB") under the Act. (Id. ¶¶ 1, 11). Mr. Kostick contends that the decision of the Administrative Law Judge dated February 19, 2021 (the "Decision") was erroneous, not supported by substantial evidence in the record, and contrary to law, and asks the Court to reverse the Commissioner's finding that he was not disabled and remand to the Commissioner for an award of benefits, or a new hearing. (Id. ¶¶ 8, 10).

The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). On April 28, 2022, Mr. Kostick moved for judgment on pleadings. (ECF No. 16 ("Mr. Kostick's Motion")). On June 27, 2022, the Commissioner cross-moved.

(ECF No. 21 (the "Commissioner's Motion")).  For the reasons set forth below, Mr. Kostick's Motion is DENIED and the Commissioner's Motion is GRANTED.

## II. BACKGROUND

### A. Procedural Background

On May 1, 2020, Mr. Kostick filed an application for DIB (the "Application"),[1] alleging disability due to injury to his back from October 23, 2019 (the "Onset Date").  (Administrative Record ("R.") (ECF Nos. 9; 9-1) 86–87, 172, 213).  The SSA denied Mr. Kostick's application initially, and on reconsideration.  (R. 77–94).  At Mr. Kostick's request, on January 21, 2021, ALJ Mark Solomon conducted a hearing by teleconference (the "Hearing").  (R. 25–48).  On February 19, 2021, ALJ Solomon issued the Decision finding that Mr. Kostick was not disabled under the Act.  (R. 14–21).  On June 23, 2021, the Decision became the final decision of the Commissioner when the Appeals Council denied Mr. Kostick's request for review.  (R. 1–7).

### B. Factual Background

#### 1. Non-Medical Evidence

Mr. Kostick was born in 1959 and was over 60 years old on the alleged Onset Date.  (R. 77).  He obtained an associates degree.  (R. 31).  He worked as sightseeing tour guide on buses and boats in New York City from January 2006 until the Onset Date.  (R. 82, 41–43).

---

[1] To qualify for DIB, one must be both disabled and insured for benefits.  42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.120, 404.315(a).  The last date a person meets the insurance requirement is the date by which the claimant must establish a disability.  Mr. Kostick met this requirement through December 31, 2024.  (R. 16).

2

### 2. Medical Evidence

Mr. Kostick and the Commissioner have each provided summaries of the medical evidence in the Record, and neither has objected to the other's summary. (See ECF Nos. 17 at 6–11; 22 at 6–11). The Court adopts both parties' summaries as accurate and complete and sets forth below the additional facts relevant to the Court's analysis. (See § IV, infra).

### C. Administrative Proceedings

### 1. The Hearing

On January 12, 2021, ALJ Solomon conducted the Hearing, at which Mr. Kostick was represented by counsel. (R. 25–48). During his testimony, Mr. Kostick testified that, in October 2019, "[t]here was a slowdown in [his] work" as a tour guide, so he requested time off to address his lower back pain, for which he ultimately underwent surgery in February 2020. (R. 31–33).[2] Mr. Kostick stated that he developed pain in his lower back after standing for 20 to 30 minutes, and that he could walk five to seven blocks, sit for about an hour, and sit for five to six hours in an eight-hour workday. (R. 32–34). At the time, he was taking only over-the-counter medication (Aleve) twice per day and taking hot showers or baths to address his pain. (R. 34). He estimated that he could lift or carry ten to twenty pounds for no more than three minutes, had problems bending over, could cook if he did not have to stand for long, did not do his own laundry, and had to "brace" and push on a chair to stand up. (R. 35–36, 38–39). He wore a back brace one or two times per week, and used a walker for four or five weeks after the surgery. (R. 37).

---

[2] The surgery occurred on February 26, 20202 at Mount Sinai Hospital and involved an "L4 and L5 laminectomy with instrumented posterolateral fusion and transforaminal lumbar fusion with autograft and allograft and insertion of biomechanical cage." (R. 255).

3

The ALJ also heard testimony from vocational expert ("VE") Jane A. Gerrish.  (R. 25, 43–47).  The ALJ asked the VE to assume an individual that had:

> the ability to perform the full range of light work with the ability to sit for six hours, stand and walk for a total of six hours, lift and carry up to 20 pounds occasionally and 10 pounds frequently, limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling.

(R. 44 (the "First Hypothetical")).  The VE testified that the individual in the First Hypothetical would be able to perform Mr. Kostick's past work as a tour guide as normally performed.  (R. 44).

The ALJ then posited an individual:

> limited to sedentary work so that standing and walking would be limited to two hours, but he could still lift and carry up to 20 pounds occasional[ly] and 10 pounds frequently with the same postural limitations.

(R. 44 (the "Second Hypothetical")).  The VE testified that the individual in the Second Hypothetical would not be able to perform Mr. Kostick's past work as actually performed.  (R. 44).  The VE agreed that Mr. Kostick did not have "any transferable skills to a sedentary job," and that he would not be able to do any work "if he were unable to sit, [] stand, and walk for a total of eight hours in an eight-hour workday[.]"  (R. 45).  The VE also testified that an employer would not tolerate him being "more than five percent off task" or having more than five absences per year.  (R. 45).  In response to questioning from Mr. Kostick's attorney, the VE testified that the job of a tour guide would not have an allowable accommodation for the elevation of legs during the workday or avoiding vibration.  (R. 47).

### 2. The ALJ's Decision and Appeals Council Review

On February 19, 2021, ALJ Solomon issued his Decision finding that Mr. Kostick had not been disabled between the Onset Date and the date of the Decision, and denying his application for DIB.  (R. 17–21).

4

ALJ Solomon followed the five-step disability determination process. At step one, the ALJ found that Mr. Kostick had not engaged in substantial gainful activity since the alleged Onset Date. (R. 16). At step two, the ALJ found that Mr. Kostick had two severe impairments, degenerative disc disease of the lumbar spine, and obesity. (R. 16–17).[3]

At step three, the ALJ found that Mr. Kostick did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Act. (R. 17). (The impairments listed in 20 C.F.R. Appendix 1, Subpart P, Part 404 are known as the "Listings"). Specifically, the ALJ found that Mr. Kostick did not meet Listing 1.04 (disorder of the spine) because he had not shown "evidence of nerve root compression, spinal arachnoiditis[;] or spinal stenosis resulting in pseudoclaudication, which resulted in the inability to ambulate effectively[.]" (R. 17 (citing Listing 1.00B2b)).

Before turning to step four, ALJ Solomon then assessed Mr. Kostick's residual functional capacity ("RFC") as being able to

> perform light work as defined in 20 C[.]F[.]R[. §] 404.1567(b) with the ability to sit for 6 hrs., stand/walk for a total of 6 hrs., lift/carry 20 lbs. occasionally and 10 lbs. frequently, except that [he] can occasionally climb ramps and stairs, climb ladders, ropes or scaffolds, balance, stoop, kneel, crouch and crawl.

(R. 18).

At step four, the ALJ determined that Mr. Kostick was capable of performing his past work as a tour guide, which did not require him to perform work-related activities precluded by his RFC. (R. 20). Because he found that Mr. Kostick could perform his past work, the ALJ did not

---

[3] Because Mr. Kostick does not allege the ALJ erred in evaluating his obesity impairment, the Court does not address it further. (See ECF No. 17).

reach step five. (R. 20–21). Accordingly, the ALJ found that Mr. Kostick was not disabled from the Onset Date through the date of the Decision. (R. 21).

On June 23, 2021, the Appeals Council denied Mr. Kostick's request for review of the Decision. (R. 1–6).

### III. LEGAL STANDARDS

#### A. Standard of Review

Under Rule 12(c), a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error. See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Judicial review, therefore, involves two levels of inquiry. First, the Court must decide whether the ALJ applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008) ("Calvello I"), adopted by, 2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008) ("Calvello II"). Second, the Court must decide whether the ALJ's decision was supported by substantial evidence. Calvello I, 2008 WL 4452359, at *8. "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."

Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted). The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts. See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999). In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly. See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999). The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant. See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

### B. Eligibility for Benefits

For purposes of DIB benefits, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A). The Act also requires that the impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(3)(B). In reviewing a claim of disability, the Commissioner must consider: "(1) objective medical facts; (2) diagnosis or

medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

Bush v. Shalala, 94 F. 3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof. At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform. See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid[.]" Zorilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### C. Medical Opinion Evidence

For benefits applications filed before March 27, 2017, the SSA's regulations required an ALJ to give more weight to those physicians with the most significant relationship with the claimant.  See 20 C.F.R. § 404.1527; see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004).  Under this "[T]reating [P]hysician [R]ule," an ALJ was required to "give good reasons" Kevin E. v. Comm'r of Soc. Sec., 528 F. Supp. 3d 104, 109, at *3–4 (W.D.N.Y. 2021) (quoting former 20 C.F.R. § 404.1527(c)(2)), if he or she determined that a treating physician's opinion was not entitled to "controlling weight," or, at least, "greater weight" than the opinions of non-treating and non-examining sources.  Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588–89 (S.D.N.Y. 2000).  In addition, under the Treating Physician Rule, a consultative physician's opinion was generally entitled to "little weight."  Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (quoting Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990)).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence, revisions that were effective on March 27, 2017.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F. R. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  These new regulations reflect a move away from a perceived hierarchy of medical sources.  See id.  The regulations now provide that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[4]  20 C.F.R.

---

[4] The new regulations define "prior administrative medical finding" as:
> [A] finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as: (i) The existence and severity of your

9

§ 404.1520c(a).  See Young v. Kijakazi, No. 20 Civ. 3604 (SDA), 2021 WL 4148733, at *9 (S.D.N.Y. Sept. 13, 2021).  Instead, an ALJ must consider all medical opinions in the record and "evaluate the[ir] persuasiveness" based on five "factors":  (1) supportability, (2) consistency, (3) relationship of the source with the claimant, (4) the medical source's specialization, and (5) any "other" factor that "tend[s] to support or contradict a medical opinion[.]"  20 C.F.R. § 404.1520c(c)(1)–(5).

The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. § 404.1520c(a). Under the new regulations, the ALJ must "explain[,]" in all cases, "how [he or she] considered" both the supportability and consistency factors, as they are "the most important factors[.]"  Id. § 404.1520c(b)(2); see Young, 2021 WL 4148733, at *9 (describing supportability and consistency as "the most important" of the five factors).  As to supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."  Vellone v. Saul, No. 20 Civ. 261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("Vellone I") (citing 20 C.F.R. § 404.1520c(c)(1)), adopted by, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("Vellone II").  Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."

---

impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) If you are a child, statements about whether your impairment(s) functionally equals the listings in Part 404, Subpart P, Appendix 1; (v) If you are an adult, your [RFC]; (vi) Whether your impairment(s) meets the duration requirement; and (vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.
20 C.F.R. § 416.913(a)(5).

Vellone I, 2021 WL 319354, at *6; see 42 U.S.C. § 423(f) (requiring ALJ to base decision on "all the evidence available in the" record).

As to the three remaining factors—relationship with the claimant, specialization, and "other"—the ALJ is required to consider, but need not explicitly discuss them, in determining the persuasiveness of the opinion of a medical source. 20 C.F.R. § 404.1520c(b)(2). If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how he or she considered those three remaining factors. See id. § 404.1520c(b)(3).

Several opinions among the district courts within the Second Circuit applying the new regulations have concluded that "the essence" of the standard for evaluating medical opinion evidence "remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar." Acosta Cuevas v. Comm'r of Soc. Sec., No. 20 Civ. 502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (surveying district court cases in the Second Circuit considering the new regulations), adopted by 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022); see, e.g., Prieto v. Comm'r of Soc. Sec., No. 20 Civ. 3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021) (noting that under both the Treating Physician Rule and the new regulations, "an ALJ's failure to properly consider and apply the requisite factors is grounds for remand"); Andrew G. v. Comm'r of Soc. Sec., No. 19 Civ. 942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (noting that "consistency and supportability" were "the foundation of the treating source rule"); see also Brianne S. v. Comm'r of Soc. Sec., No. 19 Civ. 1718 (FPG), 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (remanding to ALJ with instructions to provide explicit discussion of supportability and consistency of two medical opinions, because

11

ALJ's "mere[] state[ment]" that examining physician's opinion was not consistent with overall medical evidence was insufficient).

### D. Assessing a Claimant's Subjective Allegations

In considering a claimant's symptoms that allegedly limit his or her ability to work, the ALJ must first determine whether the claimant has "a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms[.]" 20 C.F.R. § 404.1529(c)(1); see SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). If such an impairment is found, the ALJ must next evaluate the "intensity and persistence of [the] symptoms [to] determine how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1). To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility. See Meadors v. Astrue, 370 F. App'x 179, 183–84 (2d Cir. 2010); Taylor v. Barnhart, 83 F. App'x 347, 350–51 (2d Cir. 2003).

Courts have recognized that "the second stage of [the] analysis may itself involve two parts." Sanchez v. Astrue, No. 07 Civ. 931 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010). "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)." Id. "Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed [in 20 C.F.R. § 404.1529(c)(3)]." Id. (citing Gittens v. Astrue, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)). If

the ALJ does not follow these steps, remand is appropriate.  Sanchez, 2010 WL 101501, at *14–15.

When a claimant reports symptoms that are more severe than medical evidence alone would suggest, SSA regulations require the reviewing ALJ to consider specific factors in determining the credibility of the claimant's symptoms and their limiting effects.  See Meadors, 370 F. App'x at 183–84; Briggs v. Saul, No. 19 Civ. 9776 (SLC), 2021 WL 796032, at *13 (S.D.N.Y. Feb. 26, 2021).  These seven factors include:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See Bush, 94 F.3d at 46 n.4; 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *4–9.

## IV.  DISCUSSION

In challenging the Decision, Mr. Kostick raises the single argument that the ALJ erred in evaluating the medical opinion evidence and therefore, the RFC is not supported by substantial evidence.  (ECF No. 17 at 12–15).  The Commissioner responds that the ALJ properly evaluated the medical opinion evidence and that that substantial evidence supports the RFC determination.  (ECF No. 22 at 11–23).

### A. The ALJ Properly Evaluated The Medical Opinion Evidence.

The ALJ evaluated the three medical opinions in the Record, from: (1) Wesley Bronson, M.D. ("Dr. Bronson"), Mr. Kostick's spinal surgeon at the Mount Sinai Spine Center (R. 19–20, 220, 245, 298–301); (2) A. Saeed, M.D. ("Dr. Saeed") (R. 20, 80–83), a SSA state agency medical consultant; and (3) R. Uppal, D.O. ("Dr. Uppal"), the state agency medical consultant on reconsideration (R. 20, 86–93). The Court summarizes the three medical opinions before turning to Mr. Kostick's argument that the ALJ "failed to assign weight" to Dr. Saeed's and Dr. Uppal's opinions. (ECF No. 17 at 13).

#### 1. Dr. Bronson

On December 14, 2020, Dr. Bronson completed a "Physical Capacity Evaluation" of Mr. Kostick. (R. 298–301). Dr. Bronson opined that, due his "lumbar fusion" and "chronic low back pain[,]" Mr. Kostick could, at most, occasionally lift up to ten pounds frequently and up to 20 pounds occasionally. (R. 298). Dr. Bronson opined that Mr. Kostick could stand up to one hour in an eight-hour workday, stand for 30 minutes without interruption, sit for up to four hours total and up to one hour before changing position, would need three 20-minute unscheduled breaks in a workday, and would need to elevate his feet three times per day for 20 minutes. (R. 299). Dr. Bronson noted that Mr. Kostick could occasionally balance, kneel, crouch, and crawl, but could never climb, bend, or stoop due to his decreased low back range of motion. (R. 300). Dr. Bronson noted that Mr. Kostick could occasionally reach, finger, and push and pull. (R. 300). Dr. Bronson asserted that moving machinery and vibration were "[b]ad for [Mr. Kostick's] low back . . . [.]" (R. 301). The objective findings that supported this opinion were Mr. Kostick's reduced range of motion and abnormal gait, and Dr. Bronson noted that Mr. Kostick had the

described limitations since February 26, 2020, the date on which Dr. Bronson performed the surgery. (R. 301).

### 2. Dr. Saeed

On June 23, 2020, Dr. Saaed determined, based on a review of Mr. Kostick's medical records, that Mr. Kostick could occasionally lift 20 pounds, frequently lift 10 pounds, and, in an eight-hour workday, stand or walk for six hours and sit for six hours, and perform unlimited pushing or pulling. (R. 81; see R. 82 (listing medical records from May 29, 2019 through March 16, 2020)). Dr. Saeed found that Mr. Kostick could occasionally climb ramps or stairs, climb ladders, ropes, or scaffolds, balance, and stoop, and had no limitations to kneeling, crouching, crawling, or manipulating. (R. 81–82).

### 3. Dr. Uppal

On July 28, 2020, Dr. Uppal determined, on a review of the medical records on reconsideration, that Mr. Kostick could occasionally lift 20 pounds, frequently lift 10 pounds, in an eight-hour workday could stand or walk for six hours and sit for six hours, and perform unlimited pushing and pulling. (R. 90–91, 93; see R. 92 (listing medical records from May 29, 2019 through June 8, 2020)). Dr. Uppal determined that Mr. Kostick could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, occasionally stoop, kneel, crouch, and crawl, and had no limitations to balancing or manipulating. (R. 91).

### 4. The ALJ's Analysis

The ALJ found Dr. Bronson's opinion "somewhat persuasive." (R. 19). First, the ALJ found that Dr. Bronson's opinion that Mr. Kostick could not sit, stand, or walk for eight hours in an eight-hour workday due to an abnormal gait was contradicted by the evidence that Mr. Kostick had a

normal gait and 5/5 strength in his upper and lower extremities. (R. 19; see R. 262 (noting, on March 16, 2020, that Mr. Kostick's "back pain is getting better[,]" he had "complete resolution of his lower extremity symptoms[,]" was "in no apparent distress[,]" and had 5/5 motor testing in the lower extremities); 265 (noting, on June 8, 2020, that "he is doing great" and "gets occasional back stiffness but has complete resolution of his lower extremity pains" as well as 5/5 motor testing in the lower extremities with "no restrictions"); 293–95 (noting, on September 18, 2020, that he is "doing really well[,]" "has complete resolution of his lower extremity symptoms[,]" and "occasional back tightness")). The ALJ also disagreed that the Record supported the dexterity and climbing, bending, and stooping restrictions that Dr. Bronson had noted. (R. 19). The ALJ agreed, however, that Dr. Bronson's opinion as to Mr. Kostick's lifting abilities and non-exertional postural limitations were "generally supported" by the record, including Dr. Bronson's treatment notes, which showed "mild tenderness in the lumbar spine." (R. 19; see R. 262–65, 293).

The ALJ found Dr. Saeed's opinions somewhat persuasive and Dr. Uppal's opinions persuasive. (R. 20). The ALJ agreed that both of their "opinions of 'light' exertional level limitations and occasional postural limitations [were] generally supported by the record[,]" which showed that Mr. Kostick "had tenderness in the lumbar spine but had a normal gait, had 5/5 strength in the upper and lower extremities and had a negative straight-leg raising test." (R. 20; see R. 247–62; 265–76; 293–96). Noting that the consultants' opinions as to Mr. Kostick's ability to kneel, crouch, and crawl, the ALJ found Dr. Uppal's opinion "more persuasive, because it is closer in time to the date of the [D]ecision and it is supported by the treatment notes[.]" (R. 20).

Contrary to Mr. Kostick's argument, the Court finds that the ALJ did not err in "fail[ing] to assign weight" to the medical opinions. (ECF No. 17 at 13). As the Commissioner correctly notes, (see ECF No. 22 at 20), the new regulations apply to the Application Mr. Kostick filed on May 21, 2020 (see R. 86–87, 172, 213), and provide that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (emphasis added). The new regulations thus precluded the ALJ of doing that which Mr. Kostick claims to have been error. Here, the ALJ correctly focused on the persuasiveness of the three medical opinions using the factors listed in the regulations, the most important being supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Therefore, the failure to assign "weight" does not undermine the ALJ's Decision. (ECF No. 17 at 13).

Furthermore, the Court finds that the ALJ's evaluation of the persuasiveness of the medical opinions was supported by substantial evidence in the Record. Both Dr. Saeed and Dr. Uppal relied on Dr. Bronson's treatment records before and after Mr. Kostick's surgery, showing that he had a normal gait, could walk heel-to-toe, and had 5/5 strength in his lower extremities. (R. 80–82, 90–92; see R. 246–49, 250–52, 255–58, 263, 267–69, 282–85, 293–95). Dr. Uppal also had the benefit of more recent treatment notes from June 8, 2020, when Dr. Bronson observed that Mr. Kostick was "doing well" and had "no restrictions." (R. 265–66; see R. 91–92). Given this more recent information, the ALJ appropriately found Dr. Uppal's opinion more persuasive than Dr. Saeed's. See 20 C.F.R. § 404.1520c(c)(5) (noting ALJ's ability to consider other factors including a source's "familiarity with the other evidence" in the record); see also Prieto, 2021 WL 3475625, at *9 n.4 (discussing ALJ's ability to consider "other factors" in comparing two opinions

that are equally well-supported and consistent with the record but not exactly the same). Although Dr. Uppal did not appear to have reviewed Dr. Bronson's most recent treatment notes in the Record, dated September 18, 2020, the observations that Mr. Kostick had only "occasional back tightness," but "no real concerns[,]" was "in no apparent distress[,]" and showed 5/5 motor testing, normal sensation, and positive reflexes in his lower extremities, serve to reinforce the improvement that Dr. Uppal observed in the June 8, 2020 notes.  (R. 294).

Finally, to the extent Mr. Kostick is suggesting that the ALJ should have found the opinion of Dr. Bronson, as his treating physician, more persuasive, Mr. Kostick is incorrectly invoking the now-superseded Treating Physician Rule, (see § III.C, supra), and asking the Court to reevaluate the Commissioner's factual findings.  (ECF No. 17 at 13–14).  The Court must uphold the Commissioner's findings of fact unless "a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quotation marks and citation omitted).  "[I]n determining whether the ALJ's factual findings are supported by substantial evidence, the reviewing court may not reweigh the evidence or substitute its own opinion for that of the ALJ." Gilliam v. Comm'r of Soc. Sec., No. 17 Civ. 3764 (ER) (BCM), 2018 WL 9837921, at *10 (S.D.N.Y. Sept. 5, 2018), adopted sub nom. Gilliam v. Berryhill, 2019 WL 5188946 (S.D.N.Y. Oct. 15, 2019).  Indeed, "[i]t is for the SSA, and not this court, to weigh the conflicting evidence in the record." Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998); see Veino, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  Having determined that the ALJ's evaluation of the medical source opinions is supported by substantial evidence, and considering the "very deferential standard of

review" applicable to this case, the Court declines to disturb the ALJ's factual determinations. Brault, 683 F.3d at 448.

## V. CONCLUSION

For the reasons set forth above, Mr. Kostick's Motion is DENIED and the Commissioner's Motion is GRANTED. The Clerk of Court is respectfully directed to terminate ECF Nos. 16 and 21 and close this case.

Dated:   New York, New York
         September 21, 2022

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**